**Charles LaGRANT, Plaintiff-Appellant,**

**v.**

**GULF & WESTERN MANUFACTURING COMPANY, INC., Defendant-Appellee.**

**No. 83–1759.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 4, 1984.

Decided Nov. 27, 1984.

Susan S. Friedman, Friedman & Friedman, Robert Friedman (argued), Southfield, Mich., for plaintiff-appellant.

Michael A. Holmes (argued), Arthur J. Chmiel, Cross, Wrock, Miller & Vieson, Detroit, Mich., for defendant-appellee.

Before ENGEL and WELLFORD, Circuit Judges; and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This is an age discrimination case. Appellant Charles LaGrant appeals the district court's order granting summary judgment to appellee Gulf & Western Manufacturing Company. LaGrant originally

brought this action in a State court in Michigan, alleging age discrimination in violation of the Elliot-Larsen Civil Rights Act, Mich.Comp.Laws Ann. 37–2101—37–2804. Subsequently he amended the complaint to allege a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. Gulf & Western then removed the case to the United States District Court.

After the parties had conducted discovery, Gulf & Western filed a motion for summary judgment. The district court conducted a hearing on this motion and on LaGrant's motion to amend his pleading to allege handicap discrimination under Mich. Comp.Laws Ann. 37–1101—37–1607. The Court denied the motion to amend and indicated that it was prepared to grant the motion for summary judgment. The court found that appellant had presented no evidence of age discrimination. Counsel for appellant stated that he could take the deposition of a witness who would present such evidence. The court gave appellant ten days to depose the witness. The testimony of this witness did not support appellant's claim. The court then entered an order granting the motion for summary judgment.

The record supports the conclusion of the district judge that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. Therefore, we affirm the judgment of the district court.[1]

## I

The discovery evidence is summarized in this Part I.

LaGrant was employed by Gulf & Western in January, 1970 for the position of Office Manager at its Southfield, Michigan facility. In January, 1978 his job title was changed to Manager, Administrative Services. In both positions he was responsible for office mail delivery, telephone and telex systems, remodeling offices and ordering new furniture, supplies, equipment, and maintaining company vehicles. He also supervised the company print shop and a records warehouse.

Larry Walatkiewicz, who eventually assumed LaGrant's duties, began working for Gulf & Western in November, 1972 as a mail clerk. He did not have a college degree as did LaGrant. He was promoted through a variety of lower level positions and on March 26, 1979, he was promoted to Supervisor, Office Services. LaGrant supervised Walatkiewicz at all times until January, 1980, when Walatkiewicz was promoted to Manager, Office Services.

Edward Klopfenstein became LaGrant's supervisor in February, 1978 when Klopfenstein became Vice President, Employee Relations at the Southfield facility. In late 1978, Gulf & Western began planning construction of a larger office facility, also in Southfield, Michigan. The company planned to bring other company operations into the area.

LaGrant was given several assignments to complete on an emergency basis, in addition to his duties as Manager, Administrative Services. At the completion of these duties in July, 1979, LaGrant required a five-week medical leave of absence due to mental and physical exhaustion. During this leave, Walatkiewicz and Mike Anderson assumed LaGrant's duties. Upon his return, LaGrant was given a "superior" job evaluation and a substantial increase in salary.

In October, 1979, Klopfenstein appointed LaGrant Project Director for the anticipated move of Gulf & Western's employees and offices into the new facility. These duties were in addition to those of his regu-

---

1. Appellant challenges the district court's procedure for ruling on the summary judgment motion. He charges that the district judge, through his law clerk, solicited a proposed memorandum opinion from counsel for appellee and entered it as the court's opinion without revision or notice to appellant. We do not approve of this procedure. A court properly may solicit proposed findings of fact and conclusions of law from both parties and rely on them in rendering judgment. A court also may announce from the bench its reasons for rendering summary judgment. It should not, however, have one of the parties write the court's opinion. Such a practice cannot be tolerated.

lar position. He was provided additional staff for assistance. He had twelve or thirteen regular employees at his disposal as well as a personal secretary and several temporary employees. Klopfenstein testified that LaGrant did not delegate work effectively and tried to do too much by himself. Nevertheless, he was rewarded by the company for his work during the move.

After the move, in January, 1980, La-Grant again required a month leave of absence due to exhaustion. This leave, like the previous one, was ordered by his physician. In his request for the leave of absence, LaGrant asked "that some consideration be given to a realignment of my responsibilities to better use the analytical talent that I do have. The daily contact and demands of 400 people, plus [my] staff," he wrote, "leave no time for thought or organization."

Gulf & Western divided LaGrant's duties into three parts and assigned two parts to other employees. Walatkiewicz became Office Manager in charge of Office Services, John Slater became Manager of Building Operations, and LaGrant remained Manager of Administrative Services. After the print shop closed in August, 1980, Slater was demoted from his position and his duties were assigned to LaGrant.

LaGrant's performance evaluation in December, 1980, which was prepared by Klopfenstein, indicated that LaGrant delegated work poorly. His overall performance evaluation was reduced from "superior" to "effective". His 1981 evaluation was similar. LaGrant prepared the evaluation of Walatkiewicz. Although he indicated weaknesses in completeness and self-expression, LaGrant stated that Walatkiewicz "has the rare combination of abilities to make a top-notch Administrative Services Supervisor or Manager." He recommended Walatkiewicz for the promotion to Office Manager in 1979, stating that if staffing problems were solved "additional areas of responsibility could be placed in this position."

By November, 1981, Gulf & Western experienced a serious downturn in its business. Determining that significant reductions were necessary, Executive Vice President Neil Feola issued a memorandum on December 11, 1981, ordering cutbacks in all departments with the goal of achieving a company-wide reduction of ten percent.

LaGrant prepared a memorandum to demonstrate that his department would be unable to make significant reductions. Klopfenstein then determined that Walatkiewicz' department would have to be cut more than ten percent. Klopfenstein decided that he could achieve the necessary reductions by consolidating the two separate departments into one, eliminating one of the department head positions, and reducing the total number of employees from seventeen to twelve. LaGrant was the only member of his department, Administrative Services, to be laid off. Three, all of whom were under thirty years old, were laid off from Office Services, Walatkiewicz' department. Another employee retired.

In deciding to retain Walatkiewicz rather than LaGrant, Klopfenstein testified in his deposition that he based his decision on qualifications and job performance. Klopfenstein determined that Walatkiewicz had higher performance evaluations than La-Grant in 1980 and 1981. Additionally, Klopfenstein determined that the consolidated department head position was essentially a recreation of the old job from which LaGrant had sought relief when he took his second medical leave of absence. The consolidation required reassignment of all supervisory responsibilities for Building Operations, Administrative Services, and Office Services to a single department head. Klopfenstein was concerned about La-Grant's difficulties in delegating responsibility.

Klopfenstein discussed his recommendation with Executive Vice President Feola, age 51. Feola agreed with the decision to lay off LaGrant. Gulf & Western President Edward Harris, age 58, made the final decision. Harris, Feola, and Klopfenstein all testified by deposition that age was not

a factor and did not enter into the discussions leading to LaGrant's termination.

In his deposition, LaGrant testified that he believed age played a part in his termination because he could think of no other reason for the decision. He stated that he was not aware of any specific evidence to demonstrate that age played a role in the decision, although he suspected that Walatkiewicz' lower salary was a factor. He emphasized that he had been told by his supervisor, Klopfenstein, that his performance was satisfactory and stated his belief that Walatkiewicz could not perform satisfactorily the duties that LaGrant had performed. Additionally, he emphasized that he had more experience than Walatkiewicz.

## II

■ In *Rose v. National Cash Register Corp.*, 703 F.2d 225, 227 (6th Cir.), *cert. denied,* —— ·U.S. ——, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983), this Court held that a prima facie case under the Age Discrimination in Employment Act is where the plaintiff presents evidence "which, when viewed in the light most favorable to the plaintiff, would permit a reasonable jury to find that he was discharged because of his age." A prima facie case is one where there is sufficient evidence to withstand a motion for summary judgment or for a directed verdict. The Court in *Rose* found such evidence in the statements and hiring practices of management.

■ Appellant contends that he established a prima facie case of age discrimination under the guidelines of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). These guidelines, when applied to the Age Discrimination in Employment Act, allow establishment of a prima facie case where the plaintiff shows that: 1) he was a member of the protected class, *i.e.*, between 40 and 70; 2) he was discharged; 3) he was qualified for the position; and 4) he was replaced by a younger person. *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir.1982) (citation omitted). Appellant contends that even though it is uncertain whether he was replaced, the case nevertheless should have been submitted to a jury because he raised an issue of fact regarding whether he was replaced or his position simply was eliminated.

This Court repeatedly has rejected strict adherence to the *McDonnell Douglas* criteria in cases under the Age Discrimination in Employment Act. *Rose*, 703 F.2d at 227; *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1179 (6th Cir.1983); *Ackerman*, 670 F.2d at 70; *Sahadi v. Reynolds Chemical*, 636 F.2d 1116, 1118 (6th Cir.1980) (per curiam); *Laugesen v. Anaconda Co.*, 510 F.2d 307, 312 (6th Cir.1975). In *Laugesen*, the Court held that although in a proper case the *McDonnell Douglas* guidelines may be applied in age discrimination cases, "we believe it would be inappropriate simply to borrow and apply them automatically." 510 F.2d at 312. In *Ackerman*, the court held: "A mechanical application of the *McDonnell Douglas* guidelines might bar the suit of a worthy ADEA claimant. In other cases, an overly mechanical application could supply an ADEA plaintiff with a triable claim where none exists." 670 F.2d at 70.

## III

■ We conclude that LaGrant did not establish a prima facie case either under the *McDonnell Douglas* guidelines or with other evidence. When there is a corporate reorganization or reduction in forces, a prima facie case is not established when plaintiff does not show that he was replaced by a younger person. The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination. *Sahadi*, 636 F.2d at 1118 (citing *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir.1977); *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730 (5th Cir.1977)). *See also Williams v. General Motors Corp.*, 656 F.2d 120 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).

The plaintiff in such reorganization cases must come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination in order to establish a prima facie case. *Williams,* 656 F.2d at 129. LaGrant has not succeeded in this regard. He has come forward with nothing, other than his subjective determination that he was better qualified than Walatkiewicz, to indicate that age played a role in Gulf & Western's decision to terminate him. This is not a case where the plaintiff presented evidence that management favored younger workers, tended to fire older workers, or indicated in some manner that older workers were held in disfavor. *Compare Rose,* 703 F.2d at 227; *Blackwell,* 696 F.2d at 1181; *Laugesen,* 510 F.2d at 311, 313. Moreover, due to LaGrant's previous difficulties in handling additional duties, there was a substantial question whether he was qualified fully for the new position. This further erodes his contention that he established a prima facie case.

Appellant did not establish a prima facie case of age discrimination. He did not develop any genuine issue of material fact. Accordingly, the district court's grant of summary judgment to appellee is AF-FIRMED.